**FILED**
CLERK, U.S. DISTRICT COURT
4/7/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DD___ DEPUTY

Fee Due?
Related DDJ

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

ERIC DWIGHT RICE )
_____ )
Petitioner )
)
v. )  Case No.  2:20-cv-03235-PSG(DFM)
)          (Supplied by Clerk of Court)
)
GOVERNOR GAVIN NEWSOM )
_____ )
Respondent )
(name of warden or authorized person having custody of petitioner)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.   (a) Your full name: Eric Dwight Rice
     (b) Other names you have used: Eric Johnson / Eric Quiroz

2.   Place of confinement:
     (a) Name of institution: ATASCADERO STATE HOSPITAL
     (b) Address: P.O. Box 7001 El Camino Real
     ATASCADERO, Cal. 93423
     (c) Your identification number: E-45570

3.   Are you currently being held on orders by:
     ☐ Federal authorities    ☒ State authorities    ☐ Other - explain:

4.   Are you currently:

**LODGED**
CLERK, U.S. DISTRICT COURT
4/6/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DD___ DEPUTY

     ☐ A pretrial detainee (waiting for trial on criminal charges)
     ☐ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
     If you are currently serving a sentence, provide:
       (a) Name and location of court that sentenced you: Criminal Court Building
     Los Angeles California
       (b) Docket number of criminal case: BA144523
       (c) Date of sentencing: 4-19-99
     ☐ Being held on an immigration charge
     ☒ Other (explain): I am Being held on a Criminal Conviction for aiding and Abetting "211" As well as priors pled upon under the age of 19 being unjustly to enhancements / STRIKES

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.  What are you challenging in this petition:

☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☒ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☒ Other (explain): I am Being wrongfully Held in Custody because of a No Contest plea in 1990 in CASE# TA002319, wich has been used to strike and Enhance my Sentence in Case# BA144523

6.  Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court: Los Angeles Criminal Court Building 210 West Temple   DPT 116

(b) Docket number, case number, or opinion number: BA 144523 and, TA002319

(c) Decision or action you are challenging (for disciplinary proceedings, specify the penalties imposed): I am challenging a wrongfull Conviction under California 3 Strikes Law as well as Two 5yr enhancements for prior pled upon Convictions and or Grant Assisted Suicide

(d) Date of the decision or action: April 19, 1999 and 12-28-18

## Your Earlier Challenges of the Decision or Action

7.  **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☒ Yes          ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: Dpt 111 – DPT 116 – CCB Los Angeles

(2) Date of filing: 12-24-18 – 4-19-99

(3) Docket number, case number, or opinion number: BA144523

(4) Result: Denied

(5) Date of result: 12-28-18

(6) Issues raised: Assisted Suicide or Resentencing under prop 47 or prop 57, as Base term, strikes were youth Offender plea Bargain is unJust. See Exhibit A page "12"

AO 242 (12/11)   Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

I will THAT IF THE COURT HAS NO MORAL JURISDICT-
ION OR AUTHORITY TO GRANT ASSISTED SUICIDE THEN
SUBJECT MY CASE TO JURY TRIAL       PLEASE

(b) If you answered "No," explain why you did not appeal: _____

_____

8. **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☒ Yes          ☒ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:   UNKNOWN

(2) Date of filing: _____

(3) Docket number, case number, or opinion number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

_____

(b) If you answered "No," explain why you did not file a second appeal:   I SUFFER FROM
A MENTAL DISORDER

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☒ Yes          ☒ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:   I FILED A PETITION FOR
REVIEW

(2) Date of filing:   UNKNOWN

(3) Docket number, case number, or opinion number: _____

(4) Result:   CONVICTION CONFIRMED

(5) Date of result:   UNKNOWN

(6) Issues raised:   CRUEL AND UNUSUAL PUNISHMENT FOR
LENGTH OF SENTENCE, CALJIC 171.41.1 FOR
JURY INSTRUCTIONS

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

*AND   Also   In Compentency   To   Stand   TRIAL*

(b) If you answered "No," explain why you did not file a third appeal:   *TO   Be   Frank, I*
*Don't   Know   what 'im   Doing   IM   IN   A   MENTAL   HOSPITAL*

10.    **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☒ Yes                 ☐ No

If "Yes," answer the following:

(a)      Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes                 ☒ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Case number: _____

(3)  Date of filing: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

_____

_____

_____

(b)      Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes                 ☒ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Case number: _____

(3)  Date of filing: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(c)   Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your
      conviction or sentence: I am challenging a Sentence under
      exessive punishment and Im persuing assisted
      Suicide - As I have been in Custody long enough

11.   **Appeals of immigration proceedings**

      Does this case concern immigration proceedings?

      ☐ Yes                    ☒ No

            If "Yes," provide:

      (a)   Date you were taken into immigration custody: _____

      (b)   Date of the removal or reinstatement order: _____

      (c)   Did you file an appeal with the Board of Immigration Appeals?

            ☐ Yes                  ☒ No

            If "Yes," provide:

            (1) Date of filing: _____

            (2) Case number: _____

            (3) Result: _____

            (4) Date of result: _____

            (5) Issues raised: _____

      (d)   Did you appeal the decision to the United States Court of Appeals?

            ☐ Yes                  ☒ No

            If "Yes," provide:

            (1) Name of court: _____

            (2) Date of filing: _____

            (3) Case number: _____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

_____

_____

12.     **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☒Yes                    ☐No

If "Yes," provide:

(a) Kind of petition, motion, or application:   Writ of HABEAS CORPUS

(b) Name of the authority, agency, or court:   Los Angeles Criminal Court

DPT 111

(c) Date of filing:   12-24-18

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

_____

_____

_____

_____


### Grounds for Your Challenge in This Petition

13.     State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:**  After a hung Jury I was Convicted for aiding and abetting a Non-violent "211" 2nd Degree then Convicted and Sentence under Californias 3 strikes Law

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) Supporting facts *(Be brief. Do not cite cases or law.):*

on or about November 15, 1990 I pled no contest to 5 counts of 2nd degree robbery and I count of attempted 2nd degree Robbery all counts were ran concurrent as pc. 212.5(c) I was 18 yrs. old and I was never informed that I could get strickin out later. I was sentence to 4yrs in prison.

(b) Did you present Ground One in all appeals that were available to you?

☐ Yes          ☒ No

**GROUND TWO:** I am asking for Assisted Suicide by lethal Injection in the interest of Justice.

(a) Supporting facts *(Be brief. Do not cite cases or law.):*

Fact is that I've been through hell from my childhood to now, I want to committe suicide but I would rather, that have it done publically so that people will understand how remorseful I am for my wrongs. And that I forgive those that wronged me. Enclosed herein as Exhibit "B" is a letter to my warden, a brief Synopses of some of my Traumas.

(b) Did you present Ground Two in all appeals that were available to you?

☒ Yes          ☐ No

**GROUND THREE:** I Deserve to be a resentence UNDER youth offender as The priors/Strikes that are holding me were plea bargaines I didn't entend to strike myself out.

(a) Supporting facts *(Be brief. Do not cite cases or law.):*

standing on the Record, facts show that I don't deserve to get old and die in prison.

(b) Did you present Ground Three in all appeals that were available to you?

☐ Yes          ☐ No

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** _____

_____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.):*

_____

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes                    ☐ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: _____

_____

_____

_____

### Request for Relief

15. State exactly what you want the court to do:  I want the COURT to grant resentencing for me not being Violent, OR Grant Assisted Suicide. To take into Consideration that I was under age when I pled no Contest in Case # TA002319, wich were used in Case # BA144523 to enhance and strike me out.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

4-1-20

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:  4-1-20

_____
Signature of Petitioner

_____
Signature of Attorney or other authorized person, if any

EXIBIT (A)

Denial OF WRIT OF HABEAS
ON ASSISTED SUICIDE

(1) Page

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 111

CONFORMED COPY
ORIGINAL FILED
Superior Court of California

DEC 28 2018

| In re: | ) | Case No: BA-144523 |
| | ) | |
| ERIC D. RICE, | ) | **ORDER DENYING PETITION FOR** |
| | ) | **WRIT OF HABEAS CORPUS** |
| On Habeas Corpus. | ) | |
| | ) | |

The Petition for Wit of Habeas Corpus, and its supporting declarations statements,

all which were filed with this Court, have been read and considered. The petition is

DENIED. This Court has neither the legal jurisdiction nor the moral authority to order

that Petitioner be put to death.

Dated this 24th day of December, 2018.



HENRY J. HALL
Judge of the Superior Court

1

EXHIBIT A-1

OPENING BRIEF ON WRIT

PREPARED   BY  COURT APPOINTED

FEDERAL   DEFENDER

Allison Claire

Now

HONORABLE   JUSTICE

ALLISON CLAIRE

C.A. NO. 05-16642

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ERIC D. RICE,                         )
                                      )
        Petitioner-Appellant,         )   D.C. No. CV 02-0848 GEB JFM P
                                      )   (E.D. Cal.)        .
        v.                            )
                                      )
CHERYL PLILER,                        )
                                      )
        Respondent-Appellee.          )
                                      )
                                      )

Appeal From The United States District Court
For The Eastern District of California

## OPENING BRIEF OF APPELLANT



                    QUIN DENVIR, Bar No. 49374
                    Federal Defender

                    ALLISON CLAIRE, Bar No. 17013 B
                    Assistant Federal Defender

                    801 I Street, Third Floor
                    Sacramento, California 95814
                    Telephone: (916) 498-5700

                    Attorneys for Petitioner-Appellant
                    ERIC D. RICE

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| STATEMENT OF JURISDICTION |  |  | 1 |
| ISSUE PRESENTED FOR REVIEW |  |  | 2 |
| STATEMENT OF THE CASE |  |  | 2 |
| | A. | Nature of the Case | 2 |
| | B. | Course of Proceedings | 2 |
| | C. | Statement of Facts | 3 |
| | | 1. The Offense | 3 |
| | | 2. The First Competency Proceeding | 4 |
| | | 3. The Second Competency Proceeding | 9 |
| | | 4. The Trial | 12 |
| SUMMARY OF ARGUMENT |  |  | 15 |
| ARGUMENT |  |  | 16 |
| | I. | MR. RICE'S FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS WAS VIOLATED BY TRIAL AND CONVICTION WHEN HE WAS INCOMPETENT | 16 |
| | A. | Standard Of Review | 16 |
| | B. | The Constitution Forbids Trial and Conviction of The Mentally Incompetent | 16 |
| | C. | Appellant's Procedural Due Process Rights Were Violated | 18 |
| | | 1. The Trial Court Violated Its Constitutional Duty To Protect Mr. Rice's Right Not To Be Tried When Incompetent | 18 |
| | | 2. The AEDPA Does Not Limit Relief On This Claim | 23 |

## TABLE OF CONTENTS

**Page**

    D.    Appellant's Substantive Due Process Rights
Were Violated                         27

        1.    Mr. Rice Was Incompetent When
He Was Tried                  27

        2.    The AEDPA Does Not Limit
Relief On This Claim            29

    E.    The Appropriate Remedy Is A Conditional
Writ Of Habeas Corpus          30

CONCLUSION                       32

STATEMENT OF RELATED CASES

BRIEF FORMAT CERTIFICATION

## TABLE OF AUTHORITIES

**Page**

**CASES**

Chavez v. United States, 656 F.2d 512 (9th Cir. 1981)   21

DeKaplany v. Enomoto, 540 F.2d 975 (9th Cir. 1976),
   cert. denied, 429 U.S. 1075 (1977)   17, 32

Drope v. Missouri, 420 U.S. 162 (1975)   16, 17, 22, 30

Dusky v. United States, 362 U.S. 402 (1960)   15, Passim

Eslaminia v. White, 136 F.3d 1234 (9th Cir. 1998)   16

Evans v. Raines, 800 F.2d 884 (1986)   29

Hernandez v. Ylst, 930 F.2d 714 (9th Cir. 1991)   31

Hilton v. Braunskil, 481 U.S. 770 (1987)   30

Lindh v. Murphy, 521 U.S. 320 (1997)   16

Maggio v. Fulford, 462 U.S. 111 (1983)·   26

Medina v. California, 505 U.S. 437 (1992)   18, 22

Miles v. Stainer, 108 F.3d 1109 (9th Cir. 1997)   18, 22, 23, 28

Moran v. Godinez, 57 F.3d 690 (9th Cir. 1994)
   (amended opinion), cert. denied, 516 U.S. 976 (1996)   31

Moran v. Godinez, 972 F.2d 263 (9th Cir. 1992)
   overruled on other grounds, 509 U.S. 389 (1993)   28, 32

Odle v. Woodford, 238 F.3d 1084 (9th Cir.),
   cert. denied, 534 U.S. 888 (2001)   17, 28, 32

Pate v. Robinson, 383 U.S. 375 (1966)   15, Passim

Robinson v. Ignacio, 360 F.3d 1044 (9th Cir. 2004)   24

Torres v. Prunty, 223 F.3d 1103 (9th Cir. 2000)   17, 26, 30, 31,32

United States v. Christensen, 18 F.3d 822 (9th Cir. 1994)   28

## TABLE OF AUTHORITIES

Page

### CASES (Cont'd.)

Williams v. Woodford, 384 F.3d 567 (9th Cir. 2002)
    (amended opinion), cert. denied,
      74 U.S.L.W. 3228 (October 11, 2005)        17

### CODES

28 U.S.C. §1291        1
28 U.S.C. §1294(1)        1
28 U.S.C. §2253        1
28 U.S.C. §2254        1
28 U.S.C. §2254(d)      15, 24, 29
28 U.S.C. §2254(d)(2)      25, 27, 30

Cal. Penal Code § 1372e      11, 19, 20, 21, 25

iv

C.A. NO. 05-16642

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERIC D. RICE, | ) |
| | ) |
|     Petitioner-Appellant, | ) D.C. No. CV 02-0848 GEB JFM P |
| | ) (E.D. Cal.) |
|     v. | ) |
| | ) **OPENING BRIEF OF APPELLANT** |
| CHERYL PLILER, | ) |
| | ) |
|     Respondent-Appellee. | ) |
| | ) |
| | ) |

## STATEMENT OF JURISDICTION

The district court had jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. §§ 1291, 1294(1), and 2253, this Court has jurisdiction over petitioner's appeal from the final judgment of the district court, entered on August 16, 2005. ER, Tab 18. [1] Notice of appeal was filed on August 17, 2005. ER, Tab 19. The district court granted a certificate of appealability ("COA") on August 19, 2005. ER, Tab 20.

---

1. "ER" refers to the excerpts of record filed with this Court contemporaneously with this brief.

## ISSUE PRESENTED FOR REVIEW

Were Mr. Rice's due process rights violated by trial and conviction while he was mentally incompetent?

## STATEMENT OF THE CASE

### A.   Nature of the Case

Mr. Rice, a California state prisoner serving a sentence of 35 years to life imprisonment, appeals from the district court's judgment denying him all habeas relief.

### B.   Course of Proceedings

Mr. Rice was convicted in 1999 of one count of second degree robbery, and sentenced under California law as a "third striker."  The judgment was affirmed by the California Court of Appeal on October 11, 2000.  ER, Tab 13.   The California Supreme Court denied review on January 10, 2001.  A habeas petition was filed in the California Court of Appeal and denied on May 8, 2001. ER, Tab 14.   A petition raising the same issues was filed in the California Supreme Court on July 30, 2001, and denied on January 29, 2002.  ER, Tab 15.

Mr. Rice's pro se federal petition, dated March 17, 2002, was filed in the district court on April 19, 2002.   ER, Tab 16. The petition requested appointment of counsel on grounds that "petitioner is a mentally incompetent patient" who was "mentally incapable of proceeding without counsel."  ER, Tab 16, p. 5.  The district court appointed the Federal Defender's Office on May 29,

2

2002.  On October 1, 2002, counsel filed the relevant mental health
records (under seal) and a memorandum of points and authorities.
Respondent's answer was filed on February 14, 2003, and
petitioner's traverse was filed on April 16, 2003.

The magistrate judge issued Findings and Recommendations
on June 2, 2005, recommending denial of relief on all claims.  ER,
Tab 17.  Petitioner timely filed objections.  By order filed August
16, 2005, the district court adopted the Findings and
Recommendations in full and entered judgment against petitioner.
ER, Tab 18.  A notice of appeal and request for certificate of
appealability were filed the next day.  ER, Tab 19.  The district
court certified petitioner's competency claim for appeal.  ER, Tab
20.

### C.   Statement of Facts

#### 1.   The Offense

On January 21, 1997, Eric Rice and two juvenile
companions approached two high school students, Lawrence Banner and
Kenroy Brackett, at a bus stop.  One of Mr. Rice's companions,
Shabbaz, grabbed Banner by the jacket, took a watch from him, and
threw a punch that grazed his ear.  Brackett gave Shabbaz five
dollars.  Both students observed what appeared to be a gun in Mr.
Rice's waistband.  Brackett heard one of the individuals, whom he
"assumed" was petitioner, say he had an AK-47.  Banner testified
that Mr. Rice said bullets would "fly" if they tried to run.  The
weapon, which turned out to be a BB gun, was not removed from Mr.

3

Rice's clothing at anytime during the confrontation, and Mr. Rice neither touched anyone nor took any property. The confrontation was witnessed by a police detective who happened to be monitoring narcotics activity in the neighborhood. Mr. Rice was charged with two counts of second degree robbery.

### 2. The First Competency Proceeding

Mr. Rice's first trial began on June 13, 1997. The jury hung on both counts, and a mistrial was declared on June 18, 1997.

When retrial began on October 7, 1997, defense counsel Ernesto Diaz questioned Mr. Rice's competency. Mr. Diaz told the court that Mr. Rice was asking "questions about his horses and who is going to feed his horses in lockup, talking to God and demons -- demons tell him to do certain stuff -- referring to me as Moses." ER, Tab 1, p. 9. The contents of counsel's "extended conversations" with the defendant caused Mr. Diaz to "have a doubt as to Mr. Rice's sanity at this time." Id.

After the prosecutor noted that the defendant had been "fine yesterday" and during the first trial, the court asked Mr. Diaz for elaboration of his observations. ER, Tab 1, p. 10. Counsel explained:

> Your Honor, when I first got this case [six months ago]... apparently [Mr. Rice] was taking some kind of medications at the time. He was acting very strangely. After he was on medications is what the court saw for the rest of the period, even all the way through trial.
>
> Apparently Mr. Rice may have been off medications again. I do not know, your Honor.

4

> Could be the stress of the case itself that he
> is back in trial.  Sometimes that triggers a
> reaction of what I saw this morning.  He's
> dropping his pants, talked about feeding his
> horses that were right behind him, talking to
> God, talking to demons, demons telling him
> that Commissioner Murphy had taken a shot at
> him.

ER, Tab 1, p. 11.  Moreover, that afternoon Mr. Rice had reported

"having a friend by the name of Demika (phonetic), who sometimes

gets into his body and makes him have these feminine-type

qualities."  ER, Tab 1, p. 12.

Although disagreeing with counsel's doubt as to

Mr. Rice's competence, [2] the court appointed psychologist Randy

Stotland, Ph.D., to examine Mr. Rice.  ER, Tab 1, p. 15; Tab 2, p.

77.  Dr. Stotland submitted a report dated November 14, 1997.  ER,

Tab 3 (under seal).  The report documented auditory and visual

hallucinations, often violent and/or sexual in nature [3]; a history

of physical abuse by the defendant's mother and sexual abuse in

juvenile hall;  history of psychotropic medication;  suicidal

---

2.    "All right, Mr. Diaz, the Court -- I have to be
very frank with you -- understands your observations.  However,
it does not agree based on its long observation and experience
with this defendant.  I find him over the past to be cooperative,
to be an engaging individual, and to have cooperated with you
throughout the last jury trial and at other proceedings."  ER,
Tab 1, p. 15.

3.    The patient reported being raped by demons.  ER,
Tab 3, p. 1.  "The patient hears voices.  He hears a lot of
noises.  He hears ghosts.  The voices scare him a lot.  One of
the voices says '... kill him, he's a stupid [expletive].'"  Id.
at 3.

ideation; presentation of multiple personalities <u>4/</u>; and problems

with gender identity. <u>5/</u>

> Dr. Stotland rendered the following diagnostic opinion:
>
> Diagnostically, the patient is likely psychotic. The issue of malingering cannot be entirely ruled out. However, the available history and his clinical presentation were consistent with a psychotic disorder. Additional information is needed to be more definitive. From the information available at this time, the best conclusion appears to be that he is experiencing a manic-depressive illness (Bipolar Disorder). Other considerations include <u>Paranoid Schizophrenia</u> and <u>Schizoaffective Disorder.</u> A diagnosis of a <u>personality disorder</u> with antisocial and borderline features may be warranted.
>
> An important consideration is the patient's presentation of <u>multiple personalities</u> and <u>problems with gender identity</u>. This may be part of a <u>psychotic condition</u> or may represent a <u>Dissociative Identity Disorder.</u> In any case, the patient appears to be suffering from a <u>major mental illness</u> and significant <u>cognitive deficiencies.</u>

ER, Tab 3, pp. 5-6.

> Dr. Stotland concluded that Mr. Rice's "ability to

understand right from wrong during the recent offense was marginal

at best." He recommended "long-term mental health treatment <u>in a</u>

---

(4.)   "The patient said that sometimes he is Eric Rice, 'When I feel like it.' During the interview, he began talking like a woman and said that <u>he is also Tamika Walker, an African-American female</u>. One of the <u>patient's personalities is a male</u> Latino from 18th <u>Street who speaks Spanish.</u>" ER, Tab 3, p. 1-2. Mr. Rice is an African-American male.

5.   "The patient thinks about suicide because he can't be a woman all the time." ER, Tab 3, p. 3.

locked facility.  This should include suicide intervention."  ER, Tab 3, p. 6.

On November 20, 1997, based on Dr. Stotland's report, the court formally declared a doubt as to Mr. Rice's competence, and ordered Drs. Stotland and Carlin to evaluate petitioner pursuant to Cal. Penal Code § 1368. [6/] ER, Tab 1, pp. 19-25.  Mr. Rice laughed aloud in court during the proceedings.  ER, Tab 1, p. 20.  At a subsequent routine appearance, Mr. Rice acted bizarrely, laughing and speaking in Spanish.  ER, Tab 1, pp. 26-28.

Psychiatrist Jean E. Carlin, M.D., Ph.D., submitted a report dated January 13, 1998.  ER, Tab 4 (under seal).  Mr. Rice exhibited significantly impaired mental status at the time of the interview. [7/]  Dr. Carlin concluded that Mr. Rice was psychotic, finding paranoid delusions, bizarre thinking, and "an appearance of depression."  ER, Tab 4, p. 2.  Although Dr. Carlin was skeptical about the presence of true Multiple Personality Disorder -- a disease the existence of which she apparently doubted [8/] -- she

---

6.   Penal Code § 1368 governs pretrial competency determinations.

7.   "I made no attempt to explain Confidentiality and Non-Confidentiality to this defendant at first because he was behaving in such an odd manner and he did not know the date and he would not tell me his name initially and he did not know what his charges were.  He was looking like he was going to cry and he was speaking in Spanish."  ER, Tab 4, p. 1.

8.   "I have never seen a Multiple Personality patient and I am not 100% convinced about their existence ..."  ER, Tab 4, p. 2.

noted the presentations of Tamika and the Spanish-speaking "Puppet." Her diagnosis was Bipolar Disorder with Psychotic Features, with paranoid delusions and hypersexuality. ER, Tab 4, p. 3. The report detailed Mr. Rice's sensory hallucinations, delusions, and extremely bizarre thoughts. ER, Tab 4, pp. 7-8, 9-13.

Dr. Carlin rendered the following opinion regarding competency:

> It is my opinion that [Mr. Rice] cannot and/or will not cooperate in a rational manner with counsel in presenting a defense due to his mental disorder.
>
> I believe he is becoming delusional about the motives of his public defender and many other people, including me. [9]
>
> ... This defendant would best be considered to be Not Competent to Stand Trial at the present time and sent to someplace like Patton State Hospital where he can be observed 24 hours per day by trained people and he might have further psychological testing. . . . I do not think he will cooperate in a rational manner with counsel in presenting a defense until he is properly treated and kept on medication.

ER, Tab 4, pp. 3-4.

A competence hearing was held on January 28, 1998. ER, Tab 1, pp. 29-37; Tab 2, pp. 85-86. Mr. Rice waived a jury. The

---

9.   Dr. Carlin reported that a question about the role of the judge elicited laughter followed by a string of bizarre sexual associations. ER, Tab 4, p. 8. Mr. Rice also exhibited sexual delusions involving his attorney. ER, Tab 4, p. 12. Mr. Rice was "very paranoid and very delusional about the motives of everyone" involved in the legal system, relating all interactions to sex and drugs. Id.

reports of Drs. Stotland and Carlin were submitted by stipulation in lieu of live testimony, the court declared Mr. Rice incompetent, and petitioner was committed to Patton State Hospital pursuant to Cal. Penal Code § 1370.

### 3.    The Second Competency Proceeding

Mr. Rice was admitted to Patton on February 9, 1998. Following two months of treatment, he was certified competent by the Medical Director on April 2, 1998.   ER, Tab 5, p. 87.   At Patton, Mr. Rice was diagnosed with "Bipolar Disorder Manic, Severe With Psychotic Features."   ER, Tab 5, p. 87A.   He was treated with Olanzapine and Depakane.   Id.   Due to his improvement on the medication, Patton's Interdisciplinary Treatment Team recommended "that Mr. Rice be returned to court as competent to stand trial ... with ongoing medications.   Given Mr. Rice's history of mental illness, it is critical that he continue taking medication in order to maintain trial competency."   ER, Tab 5, p. 87C.   On April 28, 1998, the court found petitioner's competence restored and criminal proceedings were resumed.   ER, Tab 5, p. 88.

Retrial commenced with jury selection on August 24, 1998. Petitioner laughed aloud in court, pulled his shirt over his head, talked to non-existent people, howled, and engaged in other bizarre behaviors.   ER, Tab 6, pp. 53-57.   On August 25, 1998, further proceedings were delayed when both the bailiff and defense counsel notified the court "that Mr. Rice was acting in a strange or bizarre fashion."   ER, Tab 6, p. 58.   Mr. Rice had "altered his

appearance" by putting white powder in his hair and "some type makeup which has a whitish-green tone smeared about his face." Id.

The court stated for the record that jury selection had been interrupted repeatedly by "uncontrolled outbursts" of laughter and bursts of spoken Spanish, as well as strange behavior:

> And then during jury selection he would move about in his chair, raise one arm and keep it extended.
>
> ... As the jury left yesterday, the court will note that the defendant, who was dressed in civilian clothing, took his shirt, which was tucked in his pants, and unbuttoned it and pulled it over his head and then down in front of his face and put his head down on counsel table as the jury left, where most of them could see.
>
> Court further notes that during jury selection, as I was discussing various questions with the jury, the jury many times was distracted, both in the audience and in the jury box, looking over at the defendant. And at several occasions I had to tell Mr. Rice to relax and calm down, not that he was being violent in any way, just that he was having some trouble controlling his body language, if you will, and then a few outbursts that were really somewhat gibberish or nonsensical, in this court's opinion.

ER, Tab 6, pp. 59-60.

Defense counsel again raised a doubt regarding Mr. Rice's competence. ER, Tab 6, p. 60. The court declared a formal doubt, and Drs. Stotland and Carlin were re-appointed to evaluate petitioner for further competency proceedings. ER, Tab 6, pp. 64-66.

Dr. Stotland submitted a report dated September 22, 1998,

10

in which he found Mr. Rice to be incompetent.  ER, Tab 8 (under seal).  Dr. Stotland reported that the defendant was not rational, did not understand what was happening in court, and was experiencing hallucinations.  ER, Tab 8.

Dr. Carlin submitted a report dated September 27, 1998, which also concluded that Mr. Rice was again incompetent to stand trial.  ER, Tab 9 (under seal).  She found that the defendant "remains psychotic," was "genuinely confused" and "somewhat depressed."  ER, Tab 9, p. 2.  He was unable to follow her explanations of the roles of people in the courtroom, because he was "too distractible [sic] from 'voices' and 'Demons' to even be able to focus on and concentrate on the task."  ER, Tab 9, p. 3.  Moreover, Dr. Carlin found Mr. Rice incapable of the rationality needed for cooperation with counsel.  ER, Tab 9, pp. 3, 6.  She emphasized that the resurgence of psychotic symptoms was likely related to improper levels of medication, and that re-stabilization on medications was needed.  ER, Tab 9, p. 3.

A second competency hearing was held on September 29, 1998.  ER, Tab 6, pp. 74- 78.  Once again, the matter was submitted on the doctors' written reports, and Mr. Rice was found incompetent.  He was returned to Patton State Hospital for further treatment.

On November 25, 1998, the Medical Director certified that Mr. Rice had been restored to competence.  ER, Tab 10.  This time the Certificate of Mental Competence was issued under Cal. Penal

Code § 1372e, which specifically provides for placement in a mental
health facility. [10/] ER, Tab 10, p. 98.  The accompanying clinical
report noted the prior regression to incompetence after treatment
at Patton, and stated: "In order to avoid his regression to an
incompetent level it is recommended that Mr. Rice be placed in a
treatment facility while awaiting his trial and during trial
procedures." ER, Tab 10, p. 100.  The formal recommendation to the
court included the following proviso:

> It is critical that Mr. Rice continue taking
> the prescribed medication in order to retain
> competency gained.   In addition, it is
> recommended that pending resumption of
> criminal proceedings, Mr. Rice be placed in a
> treatment facility rather than jail, as
> placement in a jail environment would create
> a substantial risk that Mr. Rice would again
> become incompetent to stand trial.

ER, Tab 10, p. 101.

Mr. Rice was returned to the county jail.  Court
proceedings resumed, on the basis of restored competence, on
January 5, 1999.  ER, Tab 10, p. 102.

### 4.   The Trial

Mr. Rice remained housed at the county jail. [11/]  Jury

---

10.  The prior certification of restored competence had
been issued pursuant to Penal Code § 1372, which does not provide
for such placement.  See, ER, Tab 5, p. 87.

11.  Jail records for Mr. Rice no longer exist.
However, the superior court record indicates that he was housed
at the county jail during trial.  See, e.g., Clerk's Transcript
of Proceedings at 131.  The magistrate judge found on this basis
that Mr. Rice was housed at the jail.  ER, Tab 17, p. 10.

trial on the robbery charges began on Tuesday, March 16, 1999.  The court made no inquiries whether Mr. Rice was receiving the necessary medications.  On the first day of jury selection, the prosecutor noted that Mr. Rice was again "acting up."  ER, Tab 11, p. 83.  Prospective jurors stared at the defendant as he raised his hand, wiggled his fingers, and jumped up and down.  ER, Tab 11, p. 85.

Trial nonetheless went forward.  On Friday, March 19, 1999, out of the presence of the jury before the verdict was announced, the court addressed the question whether any subsequent trial on the priors [12]/ would be to the court or to the jury.  Mr. Rice stated that he did not know what a jury trial was.  When the judge reminded him that he had just been through a jury trial, he replied, "I don't know what I been through.  I don't even know what's going on."  ER, Tab 11, p. 242.  Petitioner's subsequent waiver of a jury trial on the priors, put on the record after several sotto voce consultations with counsel, was accepted by the court.  ER, Tab 11, pp. 243-244.

The following Monday, at the court trial on alleged priors, Mr. Rice again behaved bizarrely, interrupting counsel and the judge and then talking inaudibly as the proceedings continued around him.  ER, Tab 11, pp. 254-255.  Mr. Rice became increasingly agitated, and his interruptions became increasingly sexualized.

---

12.  Trial on the priors had been bifurcated from trial on the robbery charges.

13

## SUMMARY OF ARGUMENT

Mr. Rice's due process rights were violated both procedurally and substantively when he was tried and convicted following his second return to court from Patton State Hospital. Because doctors had explicitly warned the trial court that appellant's restored competence remained fragile, and that he required medication and housing in a treatment facility in order to maintain competence, it was incumbent on the court to ascertain whether those conditions were met before proceeding to trial. Both the non-compliance with recommended treatment conditions and the re-emergence of behaviors which had characterized prior periods of incompetence raised a doubt regarding appellant's competence, which triggered the court's sua sponte duty to hold a further competency hearing. The trial court's failure to do so violated the procedural due process rights recognized in Pate v. Robinson, 383 U.S. 375 (1966).

Moreover, because Mr. Rice was no longer competent when he was tried and convicted, his substantive due process rights were also violated. See Dusky v. United States, 362 U.S. 402 (1960) (per curiam). Habeas relief is necessary to remedy these constitutional violations. Relief is not limited by 28 U.S.C. §2254(d) because, even if there was an implicit adjudication of the merits by the state court (which appellant contests), it was based on factual determinations which were objectively unreasonable.

15

**ARGUMENT**

I.  **MR. RICE'S FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS WAS VIOLATED BY TRIAL AND CONVICTION WHEN HE WAS INCOMPETENT TO STAND TRIAL AND WITHOUT PRIOR INQUIRY INTO HIS COMPETENCE**

   A.  **Standard Of Review**

   The district court's decision to deny a state prisoner's petition for habeas corpus is reviewed de novo.   <u>Eslaminia v. White</u>, 136 F.3d 1234, 1236 (9th Cir. 1998).  Because this case was filed after the effective date of the AEDPA, the provisions of that statute apply.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997).

   B.  **The Constitution Forbids Trial and Conviction of The Mentally Incompetent**

   Conviction of a person while legally incompetent to stand trial violates the constitutional guarantee of due process.  <u>Pate v. Robinson</u>, 383 U.S. 375, 378 (1966).  "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial."  <u>Drope v. Missouri</u>, 420 U.S. 162, 171 (1975).  The standard for competence is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as a factual understanding of the proceedings against him."  <u>Dusky v. United States</u>, 362 U.S. 402 (1960) (per curiam).

   The failure of a trial court to observe procedures adequate to protect a defendant's right not to be tried and

16

convicted while incompetent to stand trial deprives him of his due
process right to a fair trial. <u>Pate</u>, 383 U.S. at 386. The court
therefore has a sua sponte duty to inquire regarding competency
whenever the circumstances raise a "bona fide doubt" as to a
defendant's competence. <u>Torres v. Prunty</u>, 223 F.3d 1103, 1106-1107
(9th Cir. 2000) (quoting <u>DeKaplany v. Enomoto</u>, 540 F.2d 975, 979 (9th
Cir. 1976), <u>cert. denied</u>, 429 U.S. 1075 (1977)). Due process
requires a hearing where evidence before the court -- including
circumstances such as defendant's irrational behavior, his demeanor
at trial, and any prior medical opinion regarding his competency --
indicates the need for further inquiry into the defendant's
competency. <u>Drope</u>, 420 U.S. at 180.

The substantive due process right not to be tried while
incompetent is measured by the standard announced in <u>Dusky</u>, <u>supra</u>.
<u>Williams v. Woodford</u>, 384 F.3d 567, 608 (9th Cir. 2002) (amended
opinion), <u>cert. denied</u>, 74 U.S.L.W. 3228 (October 11, 2005). An
orientation as to time and place, and some recollection of events,
is not enough. <u>DeKaplany</u>, 540 F.2d at 979. As this Court has
explained,

> competence to stand trial does not consist
> merely of passively observing the proceedings.
> Rather, it requires the mental acuity to see,
> hear, and digest the evidence, and the ability
> to communicate with counsel in helping to
> prepare an effective defense.

<u>Odle v. Woodford</u>, 238 F.3d 1084, 1089 (9th Cir.), <u>cert. denied</u>, 534
U.S. 888 (2001).

17

C.   **Appellant's Procedural Due Process Rights Were Violated**

1.   **The Trial Court Violated Its Constitutional Duty To Protect Mr. Rice's Right Not To Be Tried When Incompetent**

Mr. Rice has claimed that the trial court violated his due process rights by failing to ensure that he was competent at the time of trial. [13]/   See <u>Pate</u>, 383 U.S. at 386; <u>Medina v. California</u>, 505 U.S. 437, 449 (1992) (trial judge has a continuing affirmative duty to ensure that a defendant is not tried while incompetent).   Under the facts and circumstance of this case, the trial judge had an affirmative duty to ensure that the conditions for continued competence were met, and to inquire anew into appellant's competence when Mr. Rice began to regress.   The court's failure to do so violated appellant's procedural rights under the due process clause.   See <u>Miles v. Stainer</u>, 108 F.3d 1109, 1112 (9th Cir. 1997) (where petitioner had previously been found incompetent, and doctors warned the trial court that continued medication was necessary to maintain competency, it was incumbent on judge to inquire whether defendant was taking his medication before accepting plea).

Trial had been suspended twice previously due to appellant's incompetence.   Both times Mr. Rice was committed to

---

13.   The pro se petition alleges, inter alia, that the court erred in failing to make further inquiries regarding competency (stating a procedural due process claim), and that Mr. Rice was in fact incompetent at the time of trial (stating a substantive due process claim).   ER, Tab 16, pp. 11, 19-20, 22-23.   Related allegations of ineffective assistance of counsel at trial and on appeal are not before this Court.

Patton State Hospital for treatment, and there restored to competency. The second certification of restored competency was issued on November 25, 1998, under the special provisions of Penal Code § 1372(e). That section authorizes pretrial housing of a previously incompetent defendant in "the hospital or facility of his or her original commitment or other appropriate secure facility...," upon the recommendation of the director of the facility where the defendant was receiving treatment.

As required for such placement by statute, the report and recommendation to the court from the hospital had specified that continued hospitalization was necessary to maintain competence *and* that jail placement would create a substantial risk of further incompetence. ER, Tab 10, pp. 100-101; Cal. Penal Code § 1372(e). [14]/ Indeed, hospital officials attributed Mr. Rice's prior return to incompetence directly to his housing in the jail upon return from the hospital. ER, Tab 10, p. 100.

When the trial court found competence restored, at a perfunctory hearing on January 5, 1999, [15]/ the Certificate Of Mental Competence and accompanying report were already over a month

---

14. The statute sets forth these requirements in the alternative, so that either opinion would support placement in a treatment facility. See, Cal. Penal Code § 1372(e). The certification and report dated November 25, 1998, stated both opinions. ER, Tab 10, pp. 100, 101.

15. The proceedings were not transcribed. The minute order reflects merely that the court had received the certification of mental competence, ordered proceedings resumed, and set dates. ER, Tab 10, p. 102.

old.   The court nonetheless failed to inquire about Mr. Rice's
housing and medication status.  ER, Tab 10, p. 102.  Indeed, the
court conducted no proceedings on the recommendation for placement
pursuant to Penal Code § 1372(e).  Although the statute calls for
an  exercise  of  judicial  discretion  when  there  has  been  a
recommendation  under  §  1372(e),  the  record  reflects  no
consideration of the recommendation from Patton.  There were no
findings or inquiries regarding the conditions which the court had
been told were necessary to continued competence.

When  trial  resumed  in  March,  there  was  no  inquiry
regarding Mr. Rice's housing, medication status, or mental status.
ER, Tab 11, passim.  Given the doctors' explicit warning that
continued competence depended on continued medication and housing
in a treatment facility, this failure to inquire itself violated
due process standards.  This Court has held that where a petitioner
had previously been found incompetent, and doctors expressly warned
the trial court that continued medication was necessary to maintain
competency,  it  was  incumbent  on  the  judge  to  inquire  whether
defendant  was  taking  his  medication  before  accepting  a  plea.
Miles, 108 F.3d at 1112.  As in   Miles, the court's failure to
inquire casts reasonable doubt on competence, and thus the validity
of the ensuing conviction.   Id.

When at the beginning of jury selection Mr. Rice began
making the same sorts of physical gestures which had marked his
previous return to incompetence, there was no inquiry regarding his

housing, medication, or mental status.   <u>See</u> ER, Tab 11, p. 85

(raised arms, finger wiggling); <u>compare</u>, ER, Tab 6, p. 59 (raised

and extended arms).   Where evidence before the court suggests that

past incompetence may have reoccurred, a hearing is required.

<u>Chavez v. United States</u>, 656 F.2d 512, 518 (9th Cir. 1981).

When, three days later, Mr. Rice indicated that he did

not understand that he had just been through a jury trial, the

court treated his confusion only as an obstacle to waiver of the

jury for trial of the priors.   ER, Tab 11, pp. 241-244.   Counsel

managed to make a record of the waiver on the second try, which was

accepted by the court despite the fact that it consisted of coached

one-word responses.   ER, Tab 11, p. 244.   Although the court

indicated that there would have to be a jury trial on the priors

unless Mr. Rice would state that he understood what a jury trial

was, the court never asked about housing, medication, or mental

status. ER, Tab 11, p. 243-244.   The court's expressed concern for

the validity of the waiver thus appears to have been formal only.

Even when Mr. Rice directly told the judge at sentencing

that he had not been receiving his medications for almost four

months, the court continued the proceedings without any inquiry

into the matter.   ER, Tab 12, p. 4.   Although the now-familiar

symptoms of petitioner's prior incompetence -- uncontrolled noises

and verbal outbursts, sexualized delusions, etc. -- were on full

display, there was no inquiry related to competence.

By (1) failing to exercise discretion under Penal Code

21

§ 1372(e) when Mr. Rice was returned to court on January 5, 1999; (2) failing to ensure that the recommended housing and treatment conditions were met from return to court through the trial; and (3) failing to hold further competence proceedings when Mr. Rice displayed a resurgence of symptoms at the onset of jury selection, the court violated its continuing affirmative duty to ensure competence. See Medina, 505 U.S. at 449; Drope, 420 U.S. at 179. A further competence hearing was constitutionally required because the circumstances presented between Mr. Rice's return to court and the conclusion of the trial raised a reasonable doubt about Mr. Rice's continued competence. See Miles, 108 F.3d at 1112.

Counsel's failure to request a third competency hearing cannot operate as a waiver of the right not to be tried while incompetent. Pate, 383 U.S. at 384. Even without a request, the court was obligated to inquire. As the Supreme Court has explained,

> The import of our decision in Pate v. Robinson is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but even one of these factors standing alone may, in some circumstances, be sufficient.

Drope, 420 U.S. at 180.

Given the prior medical opinions regarding the fragility of appellant's competence, and the need to satisfy specific housing and treatment conditions in order to maintain his competence, inquiry was required at the first suggestion that Mr. Rice was

22

reverting to behaviors consistent with his previous periods of incompetence. [16/]  Even if Mr. Rice's behavior at jury selection would not, without more, have required a competency hearing for someone with no prior history of incompetence, the acting out in this case must be viewed in light of all the mental state evidence. See Chavez, 656 F.2d at 518. [17/]  Especially given the explicit warnings of the Patton medical director, Mr. Rice's "acting out" on the eve of trial -- months after he had left the hospital environment upon which his competence depended -- was a "red flag" with constitutional implications.

This Court has previously acknowledged that a history of fluctuating competence, and warnings that future competence depends on continued medication, impose a duty of inquiry upon the trial court. Miles, 108 F.3d at 1112.  Because there was no such inquiry here, at any point between Mr. Rice's return to court on January 5, 1999, and the conclusion of trial the following March, appellant's due process rights were violated.

### 2.   The AEDPA Does Not Limit Relief On This Claim

Because Mr. Rice's habeas petition was filed after the

---

16.  It is well established that indications of mental instability which come to light during trial must be viewed in light of prior events and previous showings related to incompetence or mental state. See Drope, 420 U.S. at 180-181.

17.  "Each particular bit of evidence is not to be viewed in isolation. . . .  In determining whether there is substantial doubt [requiring a competency hearing], the trial judge must evaluate all the evidence and evaluate the probative value of each piece of evidence in light of the others." Id.

effective date of the AEDPA, it is governed by the provisions of that statute.    Habeas relief may not be grated on a claim adjudicated on the merits on state court unless

> the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).    When applying this standard, the federal court reviews the "last reasoned decision by a state court." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004) (citation and internal quotation marks omitted).

Because the California Supreme Court denied Mr. Rice's habeas petition without comment, the "last reasoned decision by a state court" is the order of the California Court of Appeal, denying habeas relief.    ER, Tabs 14, 15.    Regarding the incompetency claim(s), however, the decision contains a single sentence: "There is no showing that defendant was mentally incompetent to stand trial."    ER, Tab 14.    This is not an adjudication of the merits within the meaning of 28 U.S.C. § 2254(d).    The court does *not* say that the evidence of incompetence is insufficient to generate a doubt requiring a hearing (the merits of the procedural due process issue), or that it is insufficient to affirmatively demonstrate incompetence (the merits of the substantive due process issue).    Rather, the court says only that

In the alternative, even if the state court's decision is read as implicitly holding that no hearing was required under <u>Pate</u>, relief still would be available under the AEDPA. The Supreme Court has treated the question whether a competency hearing is required as an issue of fact. <u>See Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (per curiam). Accordingly, if a <u>Pate</u> claim has been adjudicated on the merits in state court, it is reviewed in federal habeas under § 2254(d)(2). <u>Torres</u>, 223 F.3d at 1108. In this case as in <u>Torres</u>, a state court finding that there was no bona fide doubt regarding competence would be objectively unreasonable because "conclusionary and not fairly supported by evidence on the record." <u>See id.</u> at 1109. [19]/

For all the reasons set forth above, "there was more than sufficient evidence before the trial judge" to raise a doubt as to competency. <u>Id.</u> Most significant, as <u>Miles</u> demonstrates, is the fact that the trial court had been warned that loss of competence was again likely unless special precautions were taken -- precautions which the trial court ignored. In the face of the evidentiary context as a whole, the state court's finding that there was no bona fide doubt justifying a further competency

_____

19.  In <u>Torres</u>, this Court affirmed habeas relief where the state trial court had considered and rejected a request for a competency hearing. Accordingly, it was the trial court's factual findings on the <u>Pate</u> issue which were rejected as unreasonable under § 2254(d)(2). In the case at bar, the trial court did not address the question whether a third competency hearing was required. Accordingly, this Court must review the decision of the California Court of Appeal in state habeas.

26

hearing was unreasonable within the meaning of § 2254(d)(2).

D.   **<u>Appellant's Substantive Due Process Rights Were Violated</u>**

1.   **Mr. Rice Was Incompetent When He Was Tried**

To establish a violation of his substantive right not to be tried and convicted while incompetent, appellant must demonstrate that he lacked the ability to consult with his lawyer with a reasonable degree of rational understanding, or that he lacked a "rational" or "factual" understanding of the proceedings against him. <u>Dusky</u>, 362 U.S. at 402. [20]/ Mr. Rice's incompetence at the time of trial is proven circumstantially by his mental state immediately prior to commitment to Patton, the absence of medication necessary to maintain his fragile restored competence upon return from Patton, and his behavior during the proceedings at issue. The record of the trial is replete with evidence of psychiatric decompensation which mirrors appellant's prior periods of incompetence. ER, Tab 11, pp. 83, 242, 254-266; Tab 12, pp. 1-8. Given the context of prior incompetence and psychiatric regression when housed at the jail and/or inadequately medicated, the facts and circumstances of the trial support a strong inference

---

20.   In order to be competent, a defendant must have <u>both</u> the ability to cooperate with counsel <u>and</u> an understanding of the proceedings against him. <u>Id.</u> That understanding must be <u>both</u> "rational" <u>and</u> "factual." <u>Id.</u> Although these terms have never been precisely defined, they suggest that understanding the objective facts of the charges, and the roles of the players in the courtroom, is insufficient. The defendant must also have the ability to think rationally about matters related to the proceedings and to the defense.

that Mr. Rice had returned to a state of irrationality which rendered him incompetent at the time of trial.

Appellant's expressed lack of comprehension at the trial waiver regarding priors, and at sentencing, also support a finding that Mr. Rice was not competent during the immediately preceding trial. [21/] The fact that Mr. Rice did, after coaching by counsel, say that he understood and waived his right to a jury on the priors is not countervailing evidence of competence. See United States v. Christensen, 18 F.3d 822 (9th Cir. 1994) (short, perfunctory colloquy is inadequate basis for waiver of jury trial when court is on notice of defendant's mental instability); Moran v. Godinez, 972 F.2d 263,265 (9th Cir. 1992) (monosyllabic responses at plea hearing insufficient to overcome doubt about competence raised by medication), overruled on other grounds, 509 U.S. 389 (1993).

The fact that Mr. Rice's lawyer did not ask for a third competency hearing may not be considered dispositive evidence of Rice's competence at trial. Odle, 238 F.3d at 1088-89 (noting that "counsel is not a trained mental health professional, and his failure to raise petitioner's competence does not establish that petitioner was competent"); Miles, 108 F.3d at 1113.

This Court has repeatedly acknowledged that dramatic changes can take place in a defendant's mental state in even a

---

21.   Even if Mr. Rice lost competence after the jury trial on the robbery charge, the bifurcated court trial on prior convictions -- and resulting "third strike" life sentence -- would be invalid.

short period of time.  See Miles, 108 F.3d at 1111 (change in competency within one month).  Here, Mr. Rice had previously lost competency within a four month period. [22/]  If competency cannot be presumed after a two-week lapse in medication, Miles, 108 F.3d at 1112, it certainly cannot be presumed after a lapse of almost four months.

State trial court findings of competence are generally presumed correct.  Evans v. Raines, 800 F.2d 884, 887 (1986).  In this case, however, there was no finding that Mr. Rice was competent at the time of trial: March, 1999.  The court's failure to engage in fact-finding about his competence at the relevant time is the gravamen of the procedural due process claim.  The trial court's failure to revisit its January 5, 1999, competence ruling does not constitute an independent finding that Mr. Rice was competent the following March.  Accordingly, there are no factual findings to which deference might apply.

### 2.    The AEDPA Does Not Limit Relief On This Claim

For the reasons explained above regarding the procedural due process claim, 28 U.S.C. § 2254(d) does not limit relief in this case.  The state appellate court denied habeas relief on the grounds that Mr. Rice had made "no showing" regarding competency. ER, Tab 14.  Because Mr. Rice did in fact make a showing, which was not evaluated by the state court, there is no adjudication of the

---

22.  The court had found competence restored the first time on April 28, 1998, and declared a new doubt as to competence on August 25, 1998.

merits of the substantive due process claim to which AEDPA standards can be applied.

In the alternative, any implicit finding that Mr. Rice was in fact competent must be reversed as unreasonable, because (1) the trial court failed to conduct an adequate fact finding process, and (2) the appellate court's finding was unreasonable in light of the evidence before it, for all the reasons previously explained. See § 2254(d)(2); Torres, 223 F.3d at 1107, 1109.

**E.   The Appropriate Remedy Is A Conditional Writ Of Habeas Corpus**

Because Mr. Rice was not mentally competent when he was tried and convicted, the conviction does not comport substantively with due process and is invalid. The appropriate remedy is the traditional "conditional writ," requiring respondent to free appellant if retrial is not commenced within a reasonable period. See Hilton v. Braunskil, 481 U.S. 770, 775 (1987). Retrial, of course, will be constitutionally permissible only if Mr. Rice is presently competent. Dusky, 362 U.S. at 403.

Even if the only constitutional violation in this case was the trial court's failure to hold a further competency hearing, the appropriate remedy would remain the same. See Pate, 383 U.S. at 386-387 (ordering release or retrial contingent on present competence as remedy for failure to hold competency hearing); Drope, 420 U.S. at 183 (same) (noting the "inherent difficulties of... a *nunc pro tunc* [competency] determination under the most

30

favorable circumstances"); <u>Dusky</u>, 362 U.S. at 403 (same), [23]/
<u>Torres</u>, 223 F.3d at 1110-1111 & n.7 (affirming grant of habeas
relief for <u>Pate</u> violation in form of "release or retry" order).
Where a state trial court fails to protect against the trial of an
incompetent, the resultant conviction must be reversed. <u>Hernandez
v. Ylst</u>, 930 F.2d 714, 716 (9th Cir. 1991) (citations omitted).

   While retrospective competency hearings may be
permissible in some cases, they are disfavored. <u>Moran v. Godinez</u>,
57 F.3d 690, 696 (9th Cir. 1994) (amended opinion), <u>cert. denied</u>,
516 U.S. 976 (1996). Such a remedy would not be feasible here.
Six and a half years have passed, making a retrospective competency
hearing impractical at the least and likely impossible. [24]/ <u>See
Pate</u>, 383 U.S. at 387 (retrospective hearing not appropriate after
six years). The record does not contain any expert mental health
evaluations from the relevant time period (January through March,
1999), and jail records which might document Mr. Rice's behavior,
medical care and psychiatric needs at that time have been

---

   23. In <u>Dusky</u>, the trial court had conducted a
competency hearing of unspecified nature, but the Supreme Court
held that it was conducted under an erroneous standard. Having
announced the proper standard, the Court ordered a new trial and
evaluation of present competency, given the "difficulties of
retrospectively determining the petitioner's competency of more
than a year ago[...]") <u>Id.</u>

   24. Appellant contends that the record as it now
exists is sufficient to establish his incompetence at the time of
trial. Further proceedings would not improve the evidentiary
record, for the reasons explained above.

destroyed. [25]/   See <u>Moran</u>, 54 F.3d at 696 (recognizing availability
of contemporaneous medical reports as necessary for retrospective
hearing); <u>Odle</u>, 238 F.3d at 1988 (recognizing evidentiary value of
jail records on competency question).

In the absence of contemporaneous medical reports,
especially given the swift fluctuations in Mr. Rice's mental state,
a retrospective competency hearing would serve little purpose and
would fail to protect Mr. Rice's due process rights.  Accordingly,
the only appropriate remedy here is a new trial.  <u>See Torres</u>, 223
F.3d at 1110-1111 & n.7.

### CONCLUSION

For all the reasons set forth above, the judgment of the
district court should be reversed and the petition for writ of
habeas corpus granted.

Dated: November 10, 2005

                            Respectfully submitted,

                            QUIN DENVIR
                            Federal Defender

                            ALLISON CLAIRE
                            Assistant Federal Defender

                            Attorneys for Petitioner-Appellant
                            ERIC D. RICE

---

25.  For the same reasons, an evidentiary hearing on
the substantive due process claim (the functional equivalent of a
retrospective competency hearing in district court, as in
<u>DeKaplany</u>, 540 F.2d at 896) is unfeasible and remand for that
purpose is not requested.  The existing record adequately
supports Mr. Rice's substantive due process claim.

## STATEMENT OF RELATED CASES

Petitioner-Appellant knows of no related cases.

C.A. NO. 05-16642

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ERIC D. RICE,                         )
                                      )
        Petitioner-Appellant,         )   D.C. No. CV 02-0848 GEB JFM P
                                      )   (E.D. Cal.)
        v.                            )
                                      )
CHERYL PLILER,                        )
                                      )
        Respondent-Appellee.          )
                                      )
                                      )

BRIEF FORMAT CERTIFICATION PURSUANT
TO CIRCUIT RULE 32-1

        Pursuant to Fed. R. App. P. 32(a)(7)(B) and Ninth Circuit
Rule 32-1, I certify that this opening brief contains 8,028 words.
DATED: November 10, 2005

                        QUIN DENVIR
                        Federal Defender


                        ALLISON CLAIRE
                        Assistant Federal Defender

                        Attorneys for ERIC D. RICE
                        Petitioner-Appellant

QUIN DENVIR, Bar No. 49374
Federal Defender
ALLISON CLAIRE, Bar No. 170138
Assistant Federal Defender
801 I Street, Third Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorneys for Defendant
ERIC D. RICE

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ERIC D. RICE,          ) No. CIV-s-02-0848 GEB JFM P
                          )
        Petitioner,  )
                          )
   v.                 )
                          ) **PROOF OF SERVICE**
CHERYL PLILER, Warden,  )
                          )
        Respondent.  )
                          )

     I, the undersigned, hereby certify that I am employed in the Office of the Federal Defender for the Eastern District of California, and that I am a person of such age and discretion as to be competent to serve papers.

     On November 9, 2005, I caused to be served on the parties, a copy of the attached **OPENING BRIEF OF APPELLANT AND EXCERPTS OF RECORD**, as follows:

Via inter-office mail:

David Andrew Eldridge
Deputy Attorney General
P. O. Box 944255
Sacramento, CA  94244-2550

Via U. S. Mail:

Eric D. Rice
AT 054660-6
Unit 19
Atascadero State Hospital
10333 El Camino Real
P. O. Box 7001
Atascadero, CA 93423-7001

     I declare under penalty of perjury that the foregoing is true and correct.

_Jean Krom_

EXHIBIT (B)

Letter to CDCR Warden

Pages 1- 9



HAPPY HOLYDAYS

From America Rice

 

Merry Christmas
& Happy New Year

I Had This Christmas Card, but Noone
To send it too! And Then came You -
May All you Do Prosper!

2

1

Dear A.W. Sullivan,

Hi This is America, Rice, a.ka
Eric Rice. Thank you so very much
for checking in on us.

Since we last met i've been soul
searching and I want you to know
that i've been hurt badly.

i've been abuse so much that I try
to make myself believe that it's all
my fault. But I ask myself, if it's
my fault why does it hurt so much.
When I was a kid, one of my uncle had
a friend "Tony" he would come over
for domino games, he would never play
but he would let me sit on his lap, and
he would put his hands in my pants and
fondle me. I knew it was wrong but
he was my only friend, and I was afraid
that if I told my uncle that he would kill
Tony. Growing up for me i've had many
experience simular things, it became a
pattern, and I found it harder and harder

3

2

to say no. I thought that by saying no
I would hurt someones feelings, and
people would be upset with me.

I thought that it was my Job to please
the other person. When I was 7 yrs old
I was hurt and taken away by C.P.S
to a place Called McClaren Hall in Elmonte
California. In my unit I was the smallest
and youngest of 152 other Kids. That
place was hell. I was tied up and beat
with Soap in Socks, as well as having a
blanket thrown over my head. So I got
in alot of fights, and with every fight
I was label as a problem child, everything
was my fault. There was a Heavy Set
black Man, a staff member there name
John Micheals, he punnished me by stripping
all my cloths off and place me in a cell
Kinda like Crisis bad, in fact I hate Crises
bed because of it. He would get on top of
me, his bucket digging into my stomache.
He was heavy and he grinded up against
me, then when he came he would slap

4

3

me and say for me to stop causing
problems. Needless to say but I
Awol, ran away! At 11 yrs old I was
the youngest Crackhead, I was Conned
by older and wiser Crack heads, I was
taken Advantage of. Alot of times I
would do a sexual act to earn crack
money only to get robbed by older
homeless Crack or Harroin Addicts.
Then I learned about Boys Town in
west Hollywood where I Could prostitute
and not get robbed. I slep with men
that I Knew to have "HIV" or "Aids"
without protection, and some Kind of
way I missed all Deseases. When I
was a teenager the Phrase Gay Boy Gangstas
was like a Joke we would call ourselves
when we Came together to protect ourselves
against other gangmembers. Over some years
GBG was heard more often, and actually
became a prison gang, most GAys got
the info wrong they don't really Know how
it even Came about.

5

4

On November 15th 2019 I turn
Fifty years old. I was on suicide
whach because I had a plan to
Kill myself. Prison and life in
general is disgusting me, and after
30 days im pretty sure I want to
~~the~~ die but I need to get my storey
out. I Knew so many LGBT, young
Kids ~~that~~ have died because of these
streets. @ Kids that ran away from
their homes from different states
and places," only because they were
not Accepted by their own family
and friends. Also my first lover s
name was Richard Ramirez, He
was a serial Killer! When he was
in La County Jail I would get
arrested on perpose to give him
money and Drugs! I was locked
up with alot of Known people, Ive
wittness many of my peers shrink
like skelltons, Long hair to balled, Sunken
eye socket and no teeth. These were
young handsome, fishy or flaming guis)

6

5

Friends, my people, adobpted into my
life by a broken hearts. Sweet, sweet
people that the world needs to Know.
The smiles, the clisheys, and dances!
I carry many stories, and LOVE in my
heart for these people it's overwhelming.
People need to Know! I was from an
Hispanic Gang "F13" I've seen so much
in these streets and in this System.
~~For~~ Talk about Suicidal, every goddam
day I want to Kill myself. I was
taken from my realb family as a
little Boy. But in my heart all The
LGBT I Know and Knew are my GoD
given family!

A.W. Sullavan, you, your
eyes, your presentation, the way you
seem so sincere, I want to tell you
My Story, my friends and FAMILIES
STORY. Please, Let me give you what
I've been Carrying in my heart and
on my back. There is no secondary
advantage. THIS IS REALLY REAL!
very Truelly yours
America Rice

7

## SWORN AFFIDAVIT

1. I ERIC D. RICE HEREBY SWEARS THAT ALL
2. WORDS AND STATEMENTS ARE TRUE AND
3. CORRECT, ALL STATEMENTS WRITTEN
4. HEREIN ARE TRUE, FACTUAL AND NON-RE-
5. BUTTABLE. AS I AM THE LIVING TESTIMENT
6. OF THE CLAIMS I STATE HEREIN, I DO
7. THIS SWORN AFFIDAVIT AS A FOUNDATION
8. OF TRUETH TO BE CALLED UPON FOR CIVIL
9. OR CRIMINAL LAW AFTER THIS 602 APPEAL
10. IT IS TRUE THAT I SUFFER FROM A SEVERE
11. MENTAL ILLNESS OFTEN DIOGNOSED DIFFE-
12. RENTLY DEPENDING ON WHATEVER Drs.
13. EVALUATES ME. SINCE IVE BEEN IN CDCR
14. IVE BEEN SEXUALLY ASSAULTED A NUM-
15. BER OF TIMES, SOME NOT REPORTED DO TO
16. MY MENTAL ILLNESS, THE NATURE OF
17. MY INESS: GENDER IDENTY, SCHIZOEFFECT-
18. IVE, BI POLAR TYPE, AND POST TRAUMATIC
19. DISORDER. SINCE BEING IN CDCR I'VE
20. HAD ALOT OF FIGHTS FOR MANY DIFFERENT
21. REASONS. BUT IN MENTAL HEALTH I GET
22. GOOD POINTS AND CERTIFICATES. I'VE ALR-
23. EADY PROVEN THAT I CAN LIVE IN DORMS
24. I WILL PROGRAM BETTER IN A STATE
25. HOSPITAL IT IS THE APPROPRIATE HOUSING
26. FOR ME. AT 13 YEARS OLD I WAS IN
27. CAMARILLO STATE HOSPITAL —
28.

Add Page

8

I'VE BEEN TO PATTON STATE HOSPITAL, TWICE
I'VE BEEN TO ATTASCADERO AND WAS LABEL
AS A MODAL PATIENT, AND I'VE BEEN
TO CMF TWICE AS WELL AS HERE 4
TIMES, I'VE LIVED IN THESE DORMS AND
HAVE DONE WELL. I BELIEVE THAT
IF I EVER HAVE A CHANCE TO GO TO
SCHOOL, PROGRAM WELL AND ULTAMATELY
GO HOME IT WILL BE THROUGH DSH OR
DMH, I'VE BEEN INCARSERATED 23 yrs
AND THE ONLY PEACE I'VE EXPERIENCE
HAS BEEN HERE AND DSH. I CAN'T STAY
ALIVE, AT PEACE, OR PROGRAM IN CDCR
OR MAYBE INDETERMINANT SHU.

I SWEAR UNDER THE
PENULTY OF PERJURY
THAT THE STATEMENTS
HERE IN ARE TRUE AND
CORRECT.

Eric D. Rice

12-29-19

9

# COVER SHEET ON WRIT OF HABEAS CORPUS

In THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
~~EASTERN~~ CENTRAL DISTRICT OF CALIFORNIA

1 ERIC D. RICE
2     Petitioner,
3
4 CDCR/Gov. NEWSOM
5     Respondent,
6
7
8     PETITION FOR WRIT OF HABEAS CORPUS
9
10 TO: THE HONORABLE DISTRICT COURT JUSTICES
11 OF THE NORTHEN DISTRICT OF CALIFORNIA
12
13 Petitioner Eric D. Rice, By and through inmate
14 layman assistant, hereby petitions this
15 HONORABLE COURT For a Writ of Habeas Corpus
16 directed at the California Department of
17 Corrections, and Govenor Gavin NEWSOM,
18 ordering petitioners release from custody
19 to the extent that his incarceration is
20 in violation of the Constitution, Treaties, and
21 Laws of the United States.
22
23
24
25
26
27
28
            Page (1)

By Verified Documents attached hereto,
Petitioner alleges:

## I.

Petitioner was Convicted March 19, 1999, of one Count of Aiding and Abetting 2nd degree robbery - of $5.00 and a watch. of which the ACTUAL Factual Background is Attached in Exhibit (A) Opening Brief Filed by petitioner Attorney on Writ of Habeas Corpus.

## II

Petitioner Alleges and Believe That he is entitled Justice For he has been incarcerated 23 yrs for a non-violent Crime, He is mentally ILL and is only Still in incarceration because of a Youth Offender plea when he was 18 yrs. old.

## III

The contentions in Support of this petition are fully set forth in the escorting opening brief in prior writ as well as A Denial OF Request For Writ of Habeas For Assisted Suicide and attached briefs and writs forms filed and Stamped by Respective Courts.

(2)

## IV.

Habeas Corpus is the appropriate remedy for Petitioners unlawful and unconstitutional incarceration. Fundamental Constitutional Defects amounting to denial of Due process and miscarriage of Justice" do not become irremediable when a Judgment of Conviction becomes final, even after affirmance on appeal.

## V.

The accompanying Contentions in the attached petitions Writ or Brief incorporated hereinafter by ferrerence, as well as all attachments in support to this petition.

## VI

Petitioner has no plan, Speedy, and adequate remedy at law Save for writ of Habeas Corpus, to obtain Justice an ultimately his release

(3)

Wherefore: Petitioner prays that this court;

1.) Assign Counsel to represent petitioner pursuant to 18USC § 3005(a) as petitioner is a mentally incompetent patient at The Atascadero State Hospital and is mentally incapable of proceeding without Counsel and The merits by wich petitioner is stating before the Court is overwhelming.

2.) Take Judicial notes to the fact That the petitioner is truelly Seeking assisted Suicide as an alternative to being released in the interest of Justice.

3.) Issue a Writ of Habeas Corpus or order to Show Cause at The Attorney General of California to inquire into the Lawfullness of petitioners lengthy Sentence.

4.) After full Consideration of this matter, Set aside the sentence, and order resentencing as petitioner is non-violent and Just Turned 50 yrs old. THE petitioners priors go Back To When petitioner was 18 yrs. old.

(4)

1  Although Petitioner did plea in all prior
2  negotiations, petitioner refuse to plea on
3  this case. Petitioner was only convicted of
4  aiding and abetting a FIVE Dollar Bill
5  and a watch. The petitioner never posses-
6  -ed the $5.00 or the watch. The Sentence
7  of 35 to Life was extreme. New Sentencing
8  Laws provide leedway for other persons
9  with more severe crimes to be released
10 early. Petitioner Knows that he has
11 payed enough for the crimes that he
12 has done as well as crimes that he
13 was never convicted for. Petitioner also
14 Believes that if He be granted assisted
15 Suicide then He can openly ask forgivness
16 for his wrongs as well as forgive those
17 Whome he has harmed. But spending
18 the rest of his life suffering incarceration,
19 is cruel and ~~small~~ unusual punnishment
20 So the petitioner gives moral authority
21 and Jurisdiction to grant assisted Suicide

23
24        Thank You!

(5)

Add Page



ERIC D. RICE
CDC# E45570
AT# 017604-7
Unit 33
P.O. Box 7001
ATASCADERO STATE HOSPITAL
ATASCADERO, Ca.
        93423-7001

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
312   NORTH SPRING STREET#G-8
Los Angeles, Ca.
        90012- 4793

Legal Mail

Rec

4 - 6 - 20



Legal Mail